No. 2612

Second Circuit

___

FIRST NATL. BANK OF SAN AUGUS-
TINE, TEX., v. HUTTO
FIRST NATL. BANK OF HEMPHILL,
TEX., INTERVENER

___

(April 5, 1929. Opinion and Decree.)

___

J. R. Bogard, of San Augustine, Texas, and Ponder and Ponder, of Many, attorneys for plaintiff, appellee.

R. A. Fraser, of Many, and W. F. Goodrich, of Hemphill, Texas, attorneys for intervener, appellant.

STATEMENT OF THE CASE.

REYNOLDS, J. By act, executed in the County of San Augustine in the State of Texas, on February 12, 1924, and filed for record the next day, the defendant, J. H. Hutto, mortgaged to the plaintiff, First National Bank of San Augustine, Texas, certain chattels, the proceeds of the sale whereof constitute the subject matter of this litigation, to secure the payment of certain indebtedness owing by him to it.

And by act, executed in the County of Sabine in the State of Texas, on September 23, 1924, and filed for record on October 9, 1924, the defendant, Hutto, mortgaged the same chattels to the intervener, First National Bank of Hemphill, Texas, to secure the payment of certain indebtedness owing by him to it.

Shortly prior to October 1, 1924, the mortgaged property was removed to Sabine Parish in the State of Louisiana, and, on October 23, 1924, the plaintiff caused its mortgage to be filed in Sabine Parish, Louisiana, and instituted suit against Hutto there to obtain judgment against him for its debt and for the foreclosure of its mortgage. And under proper averments and on giving bond a writ of sequestration was issued and the mortgaged property sequestered. Service was had on Hutto and judgment was rendered against him and in favor of the plaintiff for its debt and sustaining the writ of sequestration.

Thereafter the intervenor, First Na-

tional Bank of Hemphill, Texas, filed its intervention in the action and set up its debt and mortgage. It made Hutto a party defendant thereto and asked for judgment against him for its debt and recognition of its mortgage. It alleged that the lien of its mortgage on the mortgaged chattels was superior to the lien of plaintiff's mortgage and asked that its debt be paid out of the proceeds of the sale of the property by preference over plaintiff. The grounds of priority alleged are:

"* * * that the property covered by appearer's mortgage * * * was at the time of the granting of said mortgage and had been for twelve months prior thereto situated within the county of Sabine, state of Texas, and had not been removed therefrom and were not removed therefrom until they were brought to the state of Louisiana.

"* * * that the property * * * covered by its special mortgage was removed to the parish of Sabine, Louisiana, by the said J. H. Hutto, with the knowledge and consent of your appearer, and that on October 8, 1924, the said Hutto executed a certain chattel mortgage covering said property, in the parish of Sabine, which said chattel mortgage specifically refers to and recognizes on its face appearer's prior mortgage, and that said mortgage in favor of R. L. Travis containing stipulation recognizing appearer's mortgage, was duly filed for record among the mortgage records of Sabine parish, Louisiana, on October 8, 1924, and was recorded in Book 4 of chattel mortgages at page 143 and operated from that date as a recognition of appearer's mortgage and notice to third persons of the existence thereof."

Plaintiff answered intervener's petition and denied the allegations thereof.

On these issues the case was tried and there was judgment in favor of the plaintiff and against the intervener and the intervener appealed.

OPINION.

Both Louisiana and Texas counsel for plaintiff and Louisiana and Texas counsel for intervener insist that the rank of the mortgages of their respective clients is to be determined by the laws of the state of Texas and to that end proof of the laws of that state on the subject was duly made.

Intervener contends that at the time plaintiff's mortgage was given the mortgagor was not a resident of San Augustine county, Texas, and that the mortgaged property was not then in that parish, and that therefore plaintiff acquired no mortgage on the chattels by reason of the execution and recordation of its alleged mortgage.

Intervener, in brief, says:

"The District Court took the position that the question to be decided was the application of the Texas law to the two alleged mortgages, and held that the San Augustine bank had the prior mortgage. This finding of the court was based upon an erroneous statement of the facts, the court holding that the time the San Augustine bank took its mortgage the property was in the county of San Augustine and that the defendant, Hutto, then resided in San Augustine county, and that the property was removed from San Augustine county into Sabine county, Texas, without the knowledge and consent of the San Augustine bank.

"We submit that the evidence clearly shows that the property and the defendant moved into Sabine county in September, 1923, some six months before the San Augustine bank took its mortgage."

The first question to be determined, therefore, is, whether Hutto was a resident of San Augustine county and whether the property was in that county at the time the mortgage to plaintiff was given.

On this question our learned brother of the District Court held:

"The only question to be decided in this case is whether the plaintiff, the First Na-

tional Bank of San Augustine, has a superior lien and privilege upon the stock seized herein, or whether the lien of the First National Bank of Hemphill outranks plaintiff's upon said stock. It is necessary to decide said issue according to the law of the state of Texas, as the contracts were executed according to the laws of that state. At the time the mortgage was executed in favor of the First National Bank of San Augustine, Hutto was living, with his family, on his farm about seven miles from the town of San Augustine, and the stock were also located in said county. There is no question about the stock not being located in said county when the note and mortgage were given. However, when the mortgage was executed in favor of intervener, the said Hutto was doing work in Sabine county, and had the stock in this county some time before the mortgage was given, and it seems that he had also done some work in Jasper county. As stated before, it is necessary to decide this case according to the laws of Texas. The statute of said state, which has been filed in the record of this suit, contains certain provisions, and in order to cite the construction placed upon said statute by the courts of Texas, said statute is copied herein in part as follows:

"'Art. 6841 (4651). Titles to chattels, where recorded. Every deed, mortgage or other writing respecting the title of personal property hereafter executed, which by law ought to be recorded, shall be recorded in the clerk's office of the county court of that county in which the property shall remain; and if afterwards the person claiming title under such deed, mortgage or other writing, shall permit any other person in whose possession such property may be, to remove with the same or any part thereof out of the county in which the same shall be recorded, and shall not, within four months after such removal, cause the same to be recorded in the county to which such property shall be removed, such deed, mortgage or other writing, for so long as it shall not be recorded in such last mentioned county, and for so much of the property as shall have been removed, shall be voided as to all creditors and purchasers thereof for valuable consideration without notice.'

"It is the contention of the plaintiff that said property was located in the county of San Augustine and from the evidence said property was supposed to remain there. Mr. Sonders, as a witness for the First National Bank of San Augustine, stated that he learned that said property had been removed from said county, but that it was done without the consent or knowledge of the Bank of San Augustine. This being the case, it is the contention of the Bank of San Augustine that the four months' provision which requires the mortgage to be recorded in the county where the property is removed does not bind it as there was no permit granted.

"The First National Bank of Hemphill, intervener herein, contends that the evidence shows that the property in question had been located in Sabine county, Texas, for more than four months, and that there were no mortgages of record in said county at the time it took its mortgage and that its evidence shows this; that its mortgage was taken in good faith and that its lien is superior to that of the First National Bank of San Augustine.

"This brings us to the question of what construction should be placed on the word 'permit' under the statute. Under the evidence, it has not been shown that plaintiff in this suit permitted the property to be removed into another county, and allowed same to remain there for a period of four months without recording its mortgage.

"However, on this point, it seems that plaintiff made an effort shortly after learning that said property had been removed, to protect its rights, and did follow the defendant and the property into Sabine parish, Louisiana, and there brought suit and had its mortgage recorded there, even though said recordation should not be considered in the light of a mortgage under the law of this state.

"It seems from the jurisprudence, as cited in this case, that the Supreme Court of Texas and the Civil Court of Appeals, have decided that where the property was removed without the consent of the mortgagee to another county, without his knowledge and consent, that the rights of the mortgagee were not lost by his failure to record his title or mortgage in the county where the property was re-

moved, in four months. This was held in the cases hereinafter cited. Oxsheer vs. Watt, 91 Tex. 402, 44 S. W. 67; Guaranty State Bank of Tyler vs. Reeves et al., No. 2141, (213 S. W. 285) Court of Civil Appeals of Texas, June 12, 1919. In the last case there were cited the cases of Spikes vs. Brown, (Tex. Civ. App.) 49 S. W. 726; Hughes vs. Smith, 61 Texas Civ. Appeals, 443, 129 S. W. 1142; Goggan vs. Synnott, 63 Texas Civ. App. 530, 134 S. S. W. 1184; Triplett vs. Stone, (Tex. Civ. App.) 145 S. W. 660; Brinberry vs. White, (Tex. Civ. App.) 167 S. W. 205.

"In view of the above cited cases, it seems that under the law of Texas, which should be recognized in this suit, the First National Bank of San Augustine should be recognized as having the first lien and privilege upon the stock seized in this suit and that its lien is superior to that of the intervener, First National Bank of Hemphill. However, as the said Hutto was personally cited, the intervener should have personal judgment for the amount sued for against him."

The court's finding of fact is in accord with the testimony.

Mr. Sonders, president of the plaintiff bank, testified:

"Q. At the time the notes and mortgage were executed to the First National Bank, where was Hutto's residence?
"A. About seven miles out of San Augustine.
"Q. That was in San Augustine county?
"A. Yes, sir.
*   *   *
"Q. You heard the statement about the mules, on which you had a mortgage, being moved from San Augustine county to Sabine and Jasper counties; was that property moved with your knowledge and consent?
"A. No, sir.
"Q. For the bank?
"A. Individually or officially, no sir.
*   *   *
"Q. And if it was ever taken out, it was without your knowledge or consent or knowledge and consent of the bank?
"A. I learned after that he had removed it out, after this mortgage was made.

"Q. You learned it was—?
"A. In Jasper county.
"Q. It was not taken there with your knowledge and consent?
"A. No, sir."

That Hutto resided in San Augustine county when he gave the mortgage to the plaintiff and that at that time the property was in that country, intervener's evidence in no way indicated the contrary.

R. C. Travis testified:

"Q. Mr. Travis, did Hutto take the teams back into San Augustine in the spring of 1924?
"A. If he did, I didn't know it.
"Q. You were not keeping up with the teams?
"A. I can't say.
"Q. He could have taken them back and you not know it?
"A. Yes, sir.
"Q. Then you are not telling the court he didn't have them there in February and in April, 1924?
"A. No, I cannot."

George Roberts testified:

"Q. You know J. H. Hutto?
"A. Yes, sir.
"Q. Have any dealings with him; work for him the last few years?
"A. Yes, sir.
"Q. During 1924?
"A. Yes, sir.
"Q. Where, in Sabine county?
"A. In Sabine county, Texas, yes, sir.
"Q. When you began to work in Sabine county, Texas, in 1924?
"A. Know the exact month but not date; started some time in April on the job at Geneva and went to Brooklyn."

In addition to this testimony, intervener relies on the judicial admission of plaintiff in the record by the attorneys for the plaintiff that:

"We admit that Mr. Hutto was camped and worked in Sabine County."

Neither intervener's evidence nor the admission quoted overcomes the testimony

of plaintiff's witnesses, who are unimpeached, to the effect that J. H. Hutto lived in San Augustine county, Texas, at ·the time he mortgaged the property to plaintiff and that at the time he did so the mortgaged property was in that county.

Under all the evidence and the law of the state of Texas the judgment appealed from is correct and accordingly it is affirmed.