**TRINITY STATE BANK v. BOWIE CONTRACTING CO.**

No. 15156.

Court of Civil Appeals of Texas.
Fort Worth.
Sept. 15, 1950.

Rehearing Denied Oct. 13, 1950.

McGown, McGown, Godfrey & Logan, and Thomas E. Taulbee, all of Fort Worth, for appellant.

T. B. Coffield, of Bowie, for appellee.

Joe H. Cleveland, of Bowie, amicus curiae.

McDONALD, Chief Justice.

Appellee sued in the County Court of Montague County to recover a debt alleged to be owing by White-Webb Drilling Company, a partnership, and caused a writ of attachment to be levied on certain drill pipe. Appellant Trinity State Bank intervened in the suit, claiming that it had a chattel mortgage lien on the attached pipe, and sought a judgment declaring appellant's lien to be superior to the attachment lien and adjudging appellant to have the right to possession of the mortgaged property. The trial court, without a jury, rendered judgment in favor of appellee on its debt, and adjudged the attachment lien to be superior to the chattel mortgage lien.

It is undisputed that on December 16, 1947, appellant sold to White-Webb Drilling Company certain equipment which in the aggregate constituted an oil well drilling rig for $5,000 cash and $67,500 to be paid in agreed installments. The purchaser executed a chattel mortgage on the rig which was filed for record in Dallas County and also in Wood County. On July 5, 1949, White-Webb Drilling Company executed another chattel mortgage on the rig and its equipment to secure a renewal of the indebtedness still owing to appellant on the purchase price of the rig and an additional indebtedness of $5,000 owing to appellant. This mortgage was likewise filed in Dallas and in Wood Counties. White-Webb Drilling Company was a partnership composed of James White, who resided in Dallas County, and Jewell Webb, who resided in Wood County. In the bill of sale and the mortgages introduced in evidence, the partnership of White-Webb Drilling Company was described as being of Dallas County.

The drilling rig was situated in Gregg County when White-Webb Drilling Company purchased it, and was thereafter moved to Montague County, where it was used in the drilling of several wells, prior to the time the second mortgage was executed and filed for record in July of 1949. The attachment was levied in November of 1949, which was more than four months subsequent to the time the rig was moved to Montague County.

Neither of the chattel mortgages was filed for record in Montague County, and the attaching creditor had no actual notice of the chattel mortgage lien at the time the attachment was levied.

First to be decided is the question whether or not appellant's claim of priority of liens must fail because the attached property had been moved to Montague County more than four months before it was attached, and because the mortgage had not been filed there.

Article 6645, R.C.S. as amended, Vernon's Ann.Civ.St. art. 6645, provides that a chattel mortgage shall be filed in the county where the mortgaged property is located, and provides further, to quote from the statute, that

" * * * if afterwards the person claiming title under such * * * mortgage * * * shall permit any other person in whose possession such property may be to remove with the same, or any part thereof, out of the county in which the same shall be recorded, and shall not, within four (4) months after such removal, cause the same to be recorded in the county to which such property shall be removed, such * * * mortgage * * * for so long as it shall not be recorded in such last-mentioned county, and for so much of the property aforesaid as shall have been removed, shall be void as to all creditors

and purchasers thereof for valuable consideration without notice; * * *."

We hold that the quoted statute does not operate to defeat appellant's claim of priority for two reasons. First: Under Article 5490, R.C.S. as amended, Vernon's Ann.Civ.St. art. 5490, appellant had the option to file the mortgage either in the county where the property was located, or in the county where the mortgagor resided. Oxsheer·v. Watt, 91 Tex. 402, 44 S.W. 67. It is apparent that appellant elected to follow the latter course, the mortgage having been filed in the two counties where the partners respectively resided and in the county where the partnership was described as being located. It is not necessary here to decide where the mortgage might properly have been filed if the place of business of the partnership had been in some county other than that in which one or more of the partners resided. We do not think that the quoted portion of Article 6645 applies to a case where the mortgagee elects to file in the county of the mortgagor's residence rather than in the county where the property is located. Second: The facts of the case do not in any event show a removal of the property from one county to another after the execution of the renewal mortgage on July 5, 1949. The property was in Montague County when the renewal mortgage was executed, and the mortgagee then had the option to file in Montague County or in the county of the mortgagor's residence. We do not see that it is material whether or not the property was removed after the execution of the first mortgage, because the execution and filing of the renewal mortgage was sufficient to create a lien prior to the attachment lien.

We now come to what we consider the more difficult questions in the case. One is whether or not the description in the mortgage was sufficient to put appellee on constructive notice of the lien. The other is whether or not the pipe attached in the present suit was pipe actually covered by the chattel mortgages or either of them.

The equipment constituting the drilling rig was described in minute detail in the bill of sale executed by appellant and in both of the chattel mortgages. In each instance the itemized list of equipment covers some four typewritten pages of the statement of facts. In the original mortgage executed in 1947 the drill pipe was described as follows:

*"Pipe—Drill*

"Pipe—4-½ Drill—complete with tool joints—approximately 8500'
"Pipe—5-8/16″ Drill—Complete with tool joints—58′8″
"Pipe—6-⅝″ Drill—Complete with tool Joints—60′ "
In the 1949 renewal mortgage the drill pipe was described only as "Drill pipe —7,000 feet."

In 9 Texas Jurisprudence, Chattel Mortgages, No. 9, beginning at page 84, will be found good statements of the rules and citations of many decisions pertaining to the question of sufficiency of description of property in a chattel mortgage. As between the mortgagee and third parties, it is often said that that is certain which may be made certain, and that it is not essential that the description be so specific that the property may be identified by it alone, if such description suggests inquiries or means of identification which, if pursued, will disclose the property covered by the mortgage. This is not the case of a mortgage covering only 7,000 feet of drill pipe. If the drill type here in dispute was a part of the equipment which constituted the drilling rig in question, it is difficult to see how reasonable inquiry could have failed to disclose that the pipe was covered by appellant's mortgage.

We then come to the question of identity of the attached pipe. The trial court found that the attached pipe belonged to White-Webb Drilling Company and that it was used with the rig in question to drill four wells in Montague County. An officer of the appellant corporation, who testified that he handled the transactions between appellant and White-Webb Drilling Company, testified that he took an inventory of the drilling rig in Montague County on July 3, 1949, and that the attached pipe was a

part of the drill pipe described in the mortgage as composing the 7,000 feet of drill pipe that belonged to this particular rig. There is nothing in the record to dispute or discredit his testimony. He did testify, on cross-examination, that he could not identify the pipe he examined on the occasion in question as the same pipe which was with the rig when White-Webb Drilling Company purchased the rig from appellant in 1947, but his testimony is clear to the effect that the pipe which was attached was a part of the pipe on hand when the renewal mortgage was executed in 1949. Appellant argues that both mortgages expressly covered all replacements, etc., of the mortgaged property, and that if the attached pipe was not actually a part of the original pipe purchased with the rig it was covered by the replacement clause, but we do not see that any question concerning replacements of items described in the mortgage is material since the pipe which was attached appears to have been on hand when the renewal mortgage was given.

The trial court also made what may have been an inconsistent finding of fact to the effect that the drill pipe which was attached was not the same as that described in the mortgages. If the court intended by the finding first mentioned only to find that the pipe which was attached was used with the rig at the time of attachment, as distinguished from the time the renewal mortgage was given, then it is our view that there is no evidence in the record to show that the attached pipe was not the same pipe which appellant's witness testified was included in the inventory taken on July 3, 1949.

Appellee points out that the evidence shows that the rig, at the time the attachment was levied, was on one lease, and that the pipe was racked up on another lease across the road, and some four or five hundred yards from the rig. We do not consider that this evidence was sufficient to warrant a finding contrary to the undisputed testimony of appellant's officer, above referred to.

■ We are convinced that the judgment of the trial court should be reversed.

Since it may be possible that additional testimony would be available on another trial concerning both the identity of the attached pipe and the question whether inquiries, reasonably pursued, would or would not have developed the fact that the attached pipe was covered by the mortgage, it is our opinion that the cause should be remanded rather than be finally decided here on this appeal.

Reversed and remanded.